IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Jan 21, 2015

IN RE:

BOW H. BUSHYHEAD and D. LYNN
BUSHYHEAD,

                Debtors.

Case No. 13-12897-M
Chapter 7

## MEMORANDUM OPINION

A bankruptcy court may be the only place where the ability to pay a debt causes problems. The question before the Court is whether guarantors of a failed business with the ability to repay the business debt should be allowed to discharge that debt by filing a Chapter 7 bankruptcy petition. The United States Trustee says no, arguing that debtors who can pay their debts and choose not to, act in bad faith. The Debtors contend that they are exercising their rights under the laws of the United States, and one of those rights is the right to seek a bankruptcy discharge. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).[1] Its reference to this Court is proper pursuant to 28 U.S.C. § 157(a). The question of dismissal of a bankruptcy case is a core proceeding under the terms of 28 U.S.C. § 157(b)(2)(A).

### Burden of Proof

The burden of proof in this action is upon the United States Trustee to show cause for

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

dismissal of this case by a preponderance of the evidence.[2]

### Findings of Fact

Bow H. Bushyhead ("Bow") and D. Lynn Bushyhead ("Lynn") (collectively, the "Bushyheads") are husband and wife.  Bow is employed in the trucking industry. Prior to March 2013, Bow was employed by Lone Star Trucking as a terminal manager.  In March 2013, Bow took a position as a vice president of sales for Stone Trucking.  Lynn is a retired consumer price analyst formerly employed by the U.S. Department of Labor.

In November 2007, the Bushyheads formed BB&D Concepts, LLC (the "LLC"), an Oklahoma limited liability corporation.  The LLC was created to operate Planet Beach Contempo Spa (the "Spa") in Tulsa, Oklahoma.  The Spa provided automated spa services, such as tanning services, to customers.  In order to get the Spa up and running, the Bushyheads invested approximately $86,000 of their own money in the LLC.  In addition, the LLC borrowed $345,400 (the "Spa Loan") from Comerica Bank ("Comerica").  Under its original terms, the Spa Loan required monthly payments of approximately $4,100.  The Spa Loan was personally guaranteed by the Bushyheads.  Both admitted execution of personal guaranties of the Spa Loan.  In addition, the U.S. Small Business Administration (the "SBA") guaranteed eighty percent of the Spa Loan.

The Spa opened for business in November 2008, and lost money from the outset.  Lynn testified that, on average, the Spa lost between $4,000 and $10,000 per month.  While in operation, the LLC negotiated several loan modifications with Comerica, and managed to reduce the amount of the Spa Loan by almost $100,000.  The Spa ceased business operations on February 1, 2013.  At

---

[2] *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1266 (11th Cir. 2013); *Simon v. Amir (In re Amir)*, 436 B.R. 1, 16 (6th Cir. BAP 2010) (burden on moving party to establish cause under § 707(a)).

the time the Spa closed, the LLC was approximately five months in arrears on its obligations under the Spa Loan.  There have been no payments on the Spa Loan by the LLC or the Bushyheads since the Spa closed.  At the time the Spa closed, Bow had take-home pay of approximately $8,800 per month, while Lynn collected retirement income of approximately $1,350 per month.  This monthly income does not include any bonuses earned by Bow, or any income he may have earned outside his employment with Lone Star Trucking.

The financial fortunes for the Bushyheads took a positive turn on March 1, 2013.  On that day, Bow took a new position as vice president of sales for Stone Trucking ("Stone").  Upon hiring, Bow received a bonus from Stone of $62,100.  In addition, his annual income increased to $350,000.  In addition to his salary, Stone reimbursed Bow for all expenses he incurred as a member of the Oaks Country Club (the "Oaks").  After leaving Lone Star Trucking, Bow became embroiled in litigation over his departure.  The litigation was resolved when Bow negotiated a settlement whereby Lone Star Trucking paid Bow an additional six months' salary during 2013.  Lynn continued to receive her retirement benefits from the U.S. government.  As a result, from February 22 to December 31, 2013, the Bushyheads had total income from all sources of $395,537.94.  During this time period, no payments were made on the Spa Loan.

On or about March 21, 2013, counsel for Comerica sent counsel for the Bushyheads the forms necessary for Comerica to consider an offer to compromise the Spa Loan.  The forms required detailed information regarding the assets, liabilities, and income of the Bushyheads, and were to be signed by the Bushyheads under penalty of perjury.[3]  The Bushyheads made no attempt to negotiate

---

[3] *Bushyhead Exhibit 1*.  These forms were apparently required by the SBA.  According to counsel for Comerica, no settlement was possible without SBA approval.  The Court presumes that SBA approval of any settlement with the Bushyheads was a condition of the SBA guaranty.

a settlement of the Spa Loan in 2013. Lynn testified that no attempts to resolve the Spa Loan were made because she did not believe Comerica would negotiate a settlement. Bow testified that he did not use any of his income (including the $62,100 bonus from Stone) to pay towards the Spa Loan because the Spa "had been taking [money] from the family for years" and the Bushyheads "were tired of supporting a failing business that was never going anywhere." Bow also testified to his desire to pay his daughter's student loans and for his son's medical school education.

From February 21, 2013, through December 21, 2013, money flowed out of the Bushyhead household as quickly as it came in. The spending may be categorized in part as follows:

| Category | Total Spent | Monthly Average |
|---|---|---|
| Furniture: | $15,016.19 | $1,501.61 |
| Jewelry: | $2,634.00 | $263.40 |
| Vacations/Travel: | $12,784.37 | $1,278.44 |
| Oaks Reimbursement: | $24,374.03[4] | $1,741.00 |
| Food/Dining: | $29,791.19 | $2,979.12 |

The Bushyheads incurred other significant expenses during this time period. For example, on May 2, 2013, Bow leased a 2013 Mercedes 550V Sedan (the "Mercedes") from Jackie Cooper Imports (the "Car Lease").[5] In the Car Lease, the Mercedes was valued at $101,430. Bow paid a total of $11,041.84 upon the signing of the Car Lease. The Car Lease requires monthly payments of $1,368.86 for a period of 24 months. Under the terms of the Car Lease, Bow is limited to driving the Mercedes a total of 24,000 miles during the lease term. Additional miles are charged at the rate of $0.20 per mile. At the end of the Car Lease, Bow may acquire the Mercedes for a cash payment of $71,729.80. In the fall of 2013, Lynn acquired two horses for recreational purposes. The first

---

[4] This includes amounts reimbursed by Stone, and dates from December 2012.

[5] *UST Exhibit 18.*

horse, named Roxanna, was purchased in October at a cost of $5,500.  The second horse, named Stretch, was purchased in November for $3,250.  Lynn testified that she still owns the horses, and that the monthly cost of boarding the horses is approximately $500 (assuming the horses remain healthy).

On May 14, 2013, Comerica filed suit in the District Court in and for Tulsa County, Oklahoma against the LLC, the Bushyheads, and a revocable trust held by the Bushyheads to collect the Spa Loan (the "State Court Action").  The Bushyheads answered the complaint, denying that Comerica was entitled to relief against them.  On December 13, 2013, judgment was entered against the LLC in the State Court Action in the principal amount of $253,792.55, plus interest as of May 9, 2013, in the amount of $5,153.51, with late charges of $4,148.89, and interest accruing at the rate of $38.24271 per day thereafter.[6]

The Bushyheads filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on December 11, 2013.  Patrick J. Malloy III ("Malloy") serves as the trustee in this bankruptcy case. Their original bankruptcy schedules listed $825,169 in assets and $332,152 in liabilities.  Of the $825,169 in assets, $789,196, or 95.64%, were claimed as exempt.  According to the schedules, the guaranty of the Spa Loan represents $265,000, or 79.8%, of their total indebtedness.  While the Bushyheads listed their liability on the Spa Loan as "disputed," they gave no reason for doing so. The Spa Loan constitutes business debt.   The only scheduled consumer debts consist of approximately $14,000 in credit card debt and $5,500 in student loans for the Bushyheads' children.

In their schedules of current monthly income and expenses, the Bushyheads originally listed

---

[6] *UST Exhibit 23*.

$21,096 in income, and $16,004 in expenses, leaving $5,092 in monthly net income.[7]  In a later amendment to the schedules, the Bushyheads eliminated a monthly credit card payment of $684, thereby increasing their monthly net income to $5,776.  Upon examination, Bow testified that the current amount of net monthly income was less due to a voluntary increase in retirement contributions and an increase in health insurance premiums of approximately $600 per month.

The original schedules and statement of financial affairs contained several errors.  On January 17, 2014, the schedules were amended to include an additional $219,603 in unsecured debt.[8] All of this debt related to the Spa, and the single largest creditor listed was the SBA (based upon the SBA guaranty of the Spa Loan).  On February 19, 2014, the Bushyheads amended their schedule of expenses to delete credit card payments of $684 per month originally listed because the expense was not being paid.  They also disclosed an interest in a revocable trust and the sale of their residence in 2012.[9]  On March 20, 2014, the statement of financial affairs was amended to disclose the litigation between Bow and Lone Star Trucking, and to more fully disclose the Bushyheads' income in 2011, 2012, and 2013.[10]  Finally, on July 8, 2014, the Bushyheads amended their schedule of financial affairs in order to disclose gifts made to their children in the year prior to the filing of their bankruptcy case, their membership in the Oaks, and Stone's reimbursement of Bow's expenses at the Oaks.[11]

---

[7]  *UST Exhibit 3-26.*

[8]  *UST Exhibit 5.*

[9]  *UST Exhibit 7.*

[10]  *UST Exhibit 8.*

[11]  *UST Exhibit 9.*

One of the assets listed by the Bushyheads in their bankruptcy schedules was a savings account with a balance of $15,000.  At the first meeting of creditors, Malloy questioned the Bushyheads regarding these funds.  He was advised that approximately $2,000 had been removed from the savings account after the filing of the bankruptcy case.  Malloy demanded that the $2,000 be returned and the entire $15,000 from the savings account be surrendered to him as trustee.  Those funds have now been turned over to Malloy.

On May 9, 2014, the Office of the United States Trustee (the "UST") filed a motion to dismiss this bankruptcy case, alleging that the case had been filed in bad faith.[12]  The UST contends that bad faith is grounds for dismissal of a bankruptcy case under § 707(a), and is shown in this case by: (1) the failure of the Bushyheads to make an effort to repay the Spa Loan in the months prior to filing their bankruptcy case; (2) the fact that the Bushyheads presently have significant excess disposable income available for making payments to creditors; and (3) the Bushyheads' failure to voluntarily make full and complete disclosures in their bankruptcy schedules, making such disclosure only after the UST demanded additional information that exposed the errors in the original schedules and statement of financial affairs. The Bushyheads counter by saying the position of the UST is based primarily upon the Bushyheads' ability to pay their debts.  The Bushyheads argue that the ability to pay one's debts is not cause for dismissal of a Chapter 7 bankruptcy case where the debts at issue are not consumer debts.  As to the alleged inaccuracies in the schedules and statement of financial affairs, the Bushyheads argue that any errors were unintentional, minor in nature, and have been corrected.

To the extent the "Conclusions of Law" contain any items that should more appropriately

---

[12] *Docket No. 35.*

be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

The UST asks the Court to dismiss this case under § 707(a), which provides that:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including–
>
> > **(1)** unreasonable delay by the debtor that is prejudicial to creditors;
> > **(2)** nonpayment of any fees or charges required under chapter 123 of title 28; and
> > **(3)** failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.[13]

Section 707(a) stands in stark contrast to § 707(b), which provides a mechanism for dismissal of a Chapter 7 case where the debts at issue are primarily consumer debts.  Section 707(b) contains a detailed mathematical formula that courts are to utilize to determine whether the debtor has the ability to pay a significant portion of the debtor's unsecured claims.[14]  As part of the analysis, the debtor is not allowed to use his or her actual expenses; rather, the debtor's expenses are calculated based upon standards established by the Internal Revenue Service.[15]  If the math fits, there is a presumption of abuse, and the debtor has a choice: either rebut the presumption, convert the case to Chapter 13, or face dismissal.  Not so under § 707(a).

During my first year civil procedure class at the University of Southern California, our professor took us into the law library to show us wall after wall of published California court

---

[13] § 707(a).

[14] *See* § 707(b)(2).

[15] *Id.*

decisions.  His point was that if we look hard and long enough through those books we could find some judge somewhere saying virtually anything we wanted.  In many ways, reviewing the case law discussing § 707(a) is akin to my staring at the walls of California Reporters over 30 years ago.  There is one certainty, however: in enacting § 707(a), Congress unequivocally stated that "[t]he Section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal."[16]  Several bankruptcy courts have recognized the intent of Congress.[17]

The next question involves what constitutes dismissal "for cause" under § 707(a).  The statute contains three examples of cause: unreasonable delay by the debtor, failure to pay statutory fees, and failure to file the required schedules, statement of financial affairs, or other statutorily prescribed documents.[18] These examples are illustrative rather than exhaustive.[19] While courts seem to agree that the list of what constitutes cause for dismissal under § 707(a) is longer than the three items enumerated in the statute, there is a broad divergence of opinion as to what items belong on that list.

Courts are split on the issue of whether "bad faith" constitutes cause for dismissal of a bankruptcy case under § 707(a).  The United States District Court for the District of Colorado has determined there is no good-faith requirement under § 707(a):

---

[16]  H.R. Rep. No. 95-595, at 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336; S. Rep. No. 95-989, at 94 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880.

[17]  *See, e.g., In re Snyder,* 509 B.R. 945, 951 (Bankr. D.N.M. 2014)*; In re Young,* 92 B.R. 782 (Bankr. N.D. Ill. 1988); *In re Cecil*, 71 B.R. 730 (Bankr. W.D. Va. 1987).

[18]  § 707(a).

[19]  *In re Tallman*, 417 B.R. 568, 575 (N.D. Ind. 2009).

In 1978 Congress enacted a new Bankruptcy Code. The Code did not contain any express requirement that bankruptcy petitions be filed in good faith. It, however, did retain the concept that where a debtor chooses to maintain its relationship with its creditors in an attempt to reorganize, the debtor must demonstrate good faith in that relationship. *See* U.S.C. §§ 1129(a)(3), 1225(a)(3), 1325(a)(3) (1999). The foregoing provisions contain identical language mandating that the court, prior to confirming a Chapter 11, 12 or 13 plan, must find that the reorganization proposal has been made in good faith. I find that the absence of this language in the Bankruptcy Code's liquidation chapter, Chapter 7, means that Congress did not incorporate a good faith requirement when a bankruptcy court rules on motions to dismiss under 11 U.S.C. § 707(a).

Further support for this result comes from changes not made by Congress when it amended the Bankruptcy Code in 1986. It declined to insert a good faith requirement into § 707(a) when it changed § 707(b). Also, the 1986 Code changes strengthened the ability of United States Trustees to initiate action under § 707(b) where there existed substantial abuse. I agree with the bankruptcy judge that "[i]f Congress had wanted a 'substantial abuse' provision in 707(a) they could have inserted it as they did in § 707(b), but they did not do so." *In re Etcheverry,* 221 B.R. at 525.

The exclusion of good faith language in 11 U.S.C. § 707(a) makes sense if one examines the relationship of the debtor and creditor in a liquidation case. When a debtor liquidates, it surrenders all of its nonexempt assets for distribution among its creditors, and the debtor-creditor relationship is presumably terminated. Since liquidation requires no ongoing relationship between the debtor and creditor, the ability to discharge should be made available to any debtor that is willing to risk the chance that some of its debts may not be discharged. Indeed, Section 523 excepts particular debts from discharge, 11 U.S.C. § 523 (1999), and Section 727 prohibits the discharge of all debts. 11 U.S.C. § 727 (1999). This result occurs regardless of whether the debtor's motive in seeking the remedy of liquidation is grounded in good faith. When this point is coupled with the fact that the Bankruptcy Code already provides several remedies which creditors may utilize to counter the tactics of debtors engaged in bad faith, *see, e.g.,* 11 U.S.C. § 532(a)(2) (1999) (protecting creditors from extensions of credit based on fraud, false pretenses or false representations); 11 U.S.C. § 727(a) (1999) (preventing discharge to a debtor who has converted, transferred or destroyed property in attempt to avoid collections of debt by creditors), I find that the Appellant's position is without merit.[20]

*Etcheverry* represents one end of the spectrum when it comes to § 707(a).

---

[20] *Shangraw v. Etcheverry (In re Etcheverry)*, 242 B.R. 503, 505–06 (D. Colo. 1999) (hereafter "*Etcheverry*").

Other courts have taken less restrictive approaches.  The United States Court of Appeals for the Eighth Circuit has held that a debtor's bad faith in filing a Chapter 7 case may be cause for dismissal of the case, but that "bad faith under § 707(a) [must] be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched-earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction."[21]  In that case, the debtor sought Chapter 7 relief to avoid obligations incurred as part of a divorce decree, and in order to make his ex-wife file her own petition for bankruptcy relief.[22]

The United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit")  reached a similar conclusion in *In re Padilla*.[23]  In *Padilla*, the debtor filed a Chapter 7 petition listing monthly income of $1,950, monthly expenses of $1,830, and credit card debt of almost $100,000.  Most of the credit card debt was incurred in the year prior to the filing of the bankruptcy.  The UST filed a motion to dismiss the case under § 707(a), alleging that the incurring of large amounts of credit card debt in anticipation of filing bankruptcy (a tactic described as "credit card bust-out") demonstrated a lack of good faith on the part of the debtor, and was cause for dismissal of the case under § 707(a).[24]  The bankruptcy court agreed, and dismissed the case.  The Bankruptcy Appellate Panel

---

[21]  *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994) (citing *In re Khan*, 172 B.R. 613, 624–26 (Bankr. D. Minn. 1994)).

[22]  The Court noted that, in a prior case, the bankruptcy judge who decided the *Huckfeldt* case ruled that ability to pay, standing alone, was not cause for dismissal under § 707(a), and did "not assume that he ruled to the contrary here." *Id.*  It would thus appear that, at least in the Eighth Circuit, mere ability to pay a debt, without more, is not grounds for dismissal under § 707(a).

[23]  222 F.3d 1184 (9th Cir. 2000) (hereafter "*Padilla*").

[24]  The UST did not seek dismissal of the case under § 707(b).

11

of the Ninth Circuit reversed.  On further appeal, the Ninth Circuit affirmed the decision of the

Bankruptcy Appellate Panel.  As it did so, the Ninth Circuit expressly followed *Huckfeldt* and

declined to equate the term "for cause" found in § 707(a) with a requirement that a Chapter 7

petition be filed in good faith.[25]  The Ninth Circuit also noted that, while bad faith may be grounds

for dismissal of a case filed under Chapter 11 or Chapter 13 because of "the protracted relationship

between reorganization debtors and their creditors" contemplated under those chapters,[26] there was

no such ongoing relationship between a Chapter 7 debtor and her creditors, and therefore, no good

faith prerequisite to the filing of a Chapter 7 case.

On the other hand, several courts have held that "bad faith" falls within the purview of cause

The Ninth Circuit also expressly ruled that engaging in "credit card bust-out" was not cause

for dismissal under § 707(a).  The Ninth Circuit noted that the credit card debt at issue was by its

very nature consumer debt, and that Congress, in response to concerns raised by the consumer credit

industry, enacted § 707(b) of the Bankruptcy Code to deal with abusive tactics by consumer debtors,

including "avoiding bothersome unsecured debts which they could easily repay."[27]  The Ninth

Circuit held that any action based upon "credit card bust-out" must be based upon § 707(b), not §

707(a).

On the other hand, several courts have held that "bad faith" falls within the purview of cause

under § 707(a).  In *In re Baird*,[28] a husband and wife filed a joint Chapter 7 bankruptcy case.  One

of the debtors ("Dr. Baird") was a physician earning $350,000 per year.  Debtors lived what the

---

[25] *Padilla*, 222 F.3d at 1192.

[26] *Id.* at 1193.

[27] *Id.* at 1194.

[28] 456 B.R. 112 (Bankr. M.D. Fla. 2010) (hereafter "*Baird*").

12

bankruptcy court described as a "lavish lifestyle."[29]  Debtors listed over $635,000 in unsecured debt in their bankruptcy schedules, rendering them ineligible to file a Chapter 13 case.[30]  One of the unsecured debts was owed to a medical group and arose out of an alleged breach of an employment agreement between the medical group and Dr. Baird.  The medical group moved to dismiss the Chapter 7 case, relying upon § 707(a).

In its ruling, the bankruptcy court held that "[g]ood faith is an inherent requirement of Section 707(a)[.]"[31]  The court outlined fifteen factors it deemed relevant to the issue of whether a case should be dismissed under § 707(a):

1.    the debtor reduced his or her creditors to a single creditor shortly before the petition date;

2.    the debtor made no life-style adjustments or continued living a lavish life-style;

3.    the debtor filed the case in response to a judgment, pending litigation, or collection action;

---

[29]  *Id.* at 114.

[30]  *See* § 109(e).

[31]  *Baird*, 456 B.R. at 117.  This Court finds the conclusory statement in *Baird* unsupported by the authority upon which it relies.  The *Baird* court cites to a 2007 decision of the United States District Court for the Middle District of Florida, *In re McDaniel*, 363 B.R. 239, 244 (M.D. Fla. 2007).  The *McDaniel* court made its conclusory assessment that good faith is relevant under § 707(a) by citing to *Turner v. United States (In re Turner)*, 195 B.R. 476 (Bankr. N.D. Ala. 1996).  *Turner* was not a case brought under § 707(a); instead, it was an adversary proceeding brought to determine whether income taxes were dischargeable under § 523(a)(1)(A).  The discussion in *Turner* regarding good faith and dismissal referenced § 1307(c), not § 707(a).  The question was whether the debtor's prior Chapter 13 cases were filed in bad faith and whether, as a result, the IRS should be able to argue that equitable principles justified extension of the three year "lookback" period for non-dischargeability under §§ 523(a)(1)(A) and 507(a)(8).  *Id.* at 493.  In fact, much of the discussion in *Turner* focused upon the requirement that a Chapter 13 plan be filed in good faith.  *Id.*  A case standing for the proposition that a Chapter 13 debtor must file his or her plan in good faith has little or nothing to do with whether § 707(a) includes a good faith filing requirement.

4. there is an intent to avoid a large, single debt;

5. the debtor made no effort to repay debts;

6. the unfairness of the use of Chapter 7;

7. the debtor has sufficient resources to pay debts;

8.  the debtor is paying debts of insiders;

9. the schedules inflate expenses to disguise financial well-being;

10. the debtor transferred assets;

11. the debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors;

12. the debtor employed a deliberate and persistent pattern of evading a single major creditor;

13. the debtor failed to make candid and full disclosure;

14. the debtor's debts are modest in relation to assets and income; and

15. there are multiple bankruptcy filings or other procedural "gymnastics."[32]

At the same time, the *Baird* court noted that, pursuant to the legislative history of § 707(a), the ability to repay debt, standing alone, is not cause for dismissal under § 707(a).[33]  After reviewing each of the fifteen factors in detail, the bankruptcy court determined that the debtors had not filed their case in bad faith, and denied the motion to dismiss.

  In *In re Piazza*,[34] the United States Court of Appeals for the Eleventh Circuit (the "Eleventh

---

[32] *Baird*, 456 B.R. at 116–17.  Other courts have used a similar laundry list of factors in their good faith/bad faith analysis.  *See, e.g., In re Snyder*, 509 B.R. 945, 951–52 (Bankr. D.N.M. 2014) (and cases cited therein).

[33] *Baird*, 456 B.R. at 117.

[34] 719 F.3d 1253 (11th Cir. 2013) (hereafter "*Piazza*").

14

Circuit") affirmed the principle that a finding of "bad faith" was sufficient to support a motion to dismiss under § 707(a). However, the *Piazza* court refused to endorse the fifteen factor test used in *Baird*. Instead, the Eleventh Circuit found that "[b]ad faith does not lend itself to a strict formula,"[35] and ruled that "[i]t is instead a fact-intensive judgment that is 'subject to judicial discretion under the circumstances of each case.'"[36] In *Piazza*, the debtor listed unsecured debt of approximately $320,000, one half of which was owed to a single creditor, Nueterra Healthcare Physical Therapy, LLC ("Nueterra"). Nueterra held a judgment against the debtor that it had attempted to collect for more than two years prior to the bankruptcy filing. After an evidentiary hearing, the bankruptcy court dismissed the case, using the same fifteen factor test outlined by the bankruptcy court in *Baird*. Specifically, the bankruptcy court found that the debtor filed bankruptcy in response to the judgment held by Nueterra, and in response to Nueterra's collection efforts. The bankruptcy court also found that the debtor had made no meaningful effort to repay his debts or adjust his lifestyle and that he had the ability to do so. The bankruptcy court also concluded that the debtor had conveyed assets to his wife prior to filing his bankruptcy case and paid debts owed not by the debtor, but by his great aunt. These findings justified dismissal of the case in the eyes of the bankruptcy court.

On appeal to the district court, the bankruptcy court's decision was affirmed.[37] On further appeal, the Eleventh Circuit also affirmed. However, the Eleventh Circuit declined to endorse the fifteen factor test outlined in *Baird* and followed by the bankruptcy court. Instead, the *Piazza* court

---

[35] *Id.* at 1271.

[36] *Id.* (citations omitted).

[37] *In re Piazza*, 469 B.R. 388 (S.D. Fla. 2012), *aff'd*, 719 F.3d 1253 (11th Cir. 2013).

held that

> In light of its inherently discretionary nature, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a). The totality-of-the-circumstances inquiry looks for "atypical" conduct, *see Marrama,* 549 U.S. at 375 n. 11, 127 S.Ct. at 1111 n. 11, that falls short of the "honest and forthright invocation of the [Bankruptcy] Code's protections," *Kestell,* 99 F.3d at 149. In making that determination, bankruptcy courts must, as they so often do, " 'sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done.' " *See Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.),* 709 F.2d 762, 764 (1st Cir.1983) (quoting *Pepper v. Litton,* 308 U.S. 295, 304–05, 307–08, 60 S.Ct. 238, 244, 245–46, 84 L.Ed. 281 (1939)). Under this inquiry, bad faith is ultimately "evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *McDow,* 295 B.R. at 74; *see also Tamecki,* 229 F.3d at 207 (holding that bad faith turns on "whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law"—a determination which can be made only on a case-by-case basis); *Black's Law Dictionary* 159 (9th ed. 2009) (defining a "bad-faith filing" as one "that is inconsistent with the purposes of the Bankruptcy Code or is an abuse of the bankruptcy system").[38]

In response to the argument that such a test is so vague as to be little more than a "sniff test" wherein the bankruptcy judge applied "his or her own [subjective] standards," the Eleventh Circuit summarily stated that such arguments were "without merit."[39] In addition, the *Piazza* court held that the decision to dismiss a case on the basis that it was filed in bad faith was reviewed under the abuse of discretion standard, meaning that the decision will be reversed only when the appellate court is convinced that there has been "a manifest disregard of right and reason."[40]

This Court finds the *Piazza* analysis troubling. Under *Piazza*, "bad faith" is whatever a particular judge decides it to be, given the massively deferential standard of review employed by the *Piazza* court. The difficulties that come with the "totality of the circumstances" test have been aptly

---

[38] *Piazza*, 719 F.3d at 1271–72.

[39] *Id.* at 1271.

[40] *Id.* at 1273 (citing *Godfrey v. Powell*, 159 F.2d 330, 332 (5th Cir. 1947)).

described by Judge Erik Kimball:

> To say that the lack of good faith of a debtor may be cause for dismissal of a Chapter 7 case, alone, provides no guidance on what the court should consider to determine whether a debtor has in fact acted in bad faith. The court is charged to consider the totality of the circumstances. This far reaching mission suggests a largely subjective analysis. Even so, the decision as to whether a debtor acted in bad faith is one entrusted to the court's discretion and may only be overturned for an abuse of that discretion. For this reason, the court should step cautiously when asked to exercise the power to deny a debtor access to its jurisdiction.

> In an effort to focus the bad faith analysis, reported decisions point to various factors that tend to support or negate a debtor's alleged bad faith. These factors are helpful only to a point. The circumstances of each debtor are unique, and the proper weight given to each fact necessarily depends on all of the other facts presented. A list of factors provides only the appearance of a reliable test. It implies a scientific or mathematical certainty in the analysis, which it most certainly lacks.

> Many of the factors relied on by the courts in determining whether a debtor acted in bad faith in filing a petition find their genesis in decisions considering dismissal in the context of Chapter 11 and Chapter 13 cases. These factors have less and perhaps no weight in the Chapter 7 context. A Chapter 7 debtor's powers and duties under the Bankruptcy Code, its relationship with its creditors, and the overall nature of a Chapter 7 liquidation case, materially differ from a Chapter 11 or Chapter 13 case.

>                                    ***

> In light of the substantial differences between Chapter 7, on the one hand, and Chapters 11, 12, and 13, on the other, facts that indicate bad faith in a Chapter 11, 12, or 13 case do not necessarily support a finding of bad faith in a Chapter 7 case of the same debtor.

> In a Chapter 7 case, such as the cases before this court, the potential bases for dismissal on grounds of bad faith are narrow. "The ultimate question [is] whether the petition was filed with the intent and desire to obtain the relief that is available under a particular chapter of the Bankruptcy Code, through the means that Congress has specified, or whether the debtor is pursuing some other goal." In Chapter 7, a case should be dismissed on account of bad faith only where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7.[41]

---

[41] *In re Kane & Kane*, 406 B.R. 163, 167–68 (Bankr. S.D. Fla. 2009) (citations and quotation omitted) (hereafter "*Kane & Kane*").

In *Kane & Kane*, the bankruptcy court found that the filing of a Chapter 7 case because of an inability to meet debt obligations on a $2 million judgment, even where that judgment may have been the result of nefarious conduct by the debtors, was not done in bad faith.[42]  The court in *Kane & Kane* held that if the pre-petition conduct of the debtor provided the creditor a remedy under another section of the Bankruptcy Code (such a claim for non-dischargeability under § 523), the appropriate remedy is an action under the specific section of the Bankruptcy Code rather than dismissal under § 707(a).[43]  Some courts have reached a similar conclusion,[44] while other courts have vehemently disagreed with such a notion.[45]

What are we to draw from all of this?  The United States Court of Appeals for the Tenth Circuit has yet to opine on the issue.  One thing seems certain: the ability to repay pre-petition debt, standing alone, does not constitute cause to dismiss a case under § 707(a).  The legislative history says so.  The cases that say a debtor must file his or her Chapter 7 case in good faith say so.  When it comes to § 707(a), this is one of the few areas of consensus among the courts.

It is important to identify what we are talking about here.  This litigation is not about the Bushyheads being in bankruptcy.  No one cares about the filing of the Chapter 7 petition, or that the

---

[42]  The state court that entered the judgment against the debtors (who were attorneys) made several findings that the debtors violated the Florida Rules of Professional Conduct and referred the debtors to the Florida Bar for possible disciplinary action.

[43]  *Kane & Kane*, 406 B.R. at 169.

[44]  *In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000) ("Therefore, a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct.");  *In re Lobera*, 454 B.R. 824, 852 ("Provisions of the Bankruptcy Code provide specific remedies for specific problems.  Treating any of them as grounds to dismiss a case under the guise of 'cause' is a misapplication.");  *In re Khan*, 172 B.R. 613 (Bankr. D. Minn. 1994).

[45]  *See Piazza*, 719 F.3d at 1267–68.

Bushyheads have already turned over assets to Malloy.  No one has accused the Bushyheads of hiding assets, or ultimately failing to comply with the disclosure requirements contained in the Bankruptcy Code.  Dismissal of this case is sought for one reason and one reason only: to prevent the Bushyheads from obtaining the benefits of a bankruptcy discharge when it appears that they could have chosen to pay all or a portion of their scheduled debt.[46]  The question is whether § 707(a) is the proper means to that end.

While one can appreciate the efforts of those courts that have devised a multi-factor test for determining good faith (or "cause" under § 707(a)), this Court shares Judge Kimball's concerns.  Upon review, many of the enumerated factors go to the debtor's ability to pay debts.  Others, when closely examined, weigh neither in favor of or against dismissal.  Let us consider each of the factors outlined in *Baird*:

*1. The debtor reduced his or her creditors to a single creditor shortly before the petition date*

Courts that list this as a factor indicative of bad faith on the part of a debtor do so summarily.  This Court is puzzled as to how this factor supports dismissal of a Chapter 7 case.  Indeed, the creditor or creditors in a particular case may be better served by the case <u>not</u> being dismissed.  If the debtor has reduced pre-petition creditors down to one or a few by way of preferential and/or fraudulent transfers, a bankruptcy trustee may be able to recover those transfers for the benefit of all creditors.  If the trustee cannot recover these transfers (e.g., the debtor paid certain of her creditors in the ordinary course of business), then a creditor is not likely to have any better luck outside the bankruptcy arena.

---

[46]  This Court has no doubt that if the Bushyheads agreed to waive their discharge, this litigation would come to a screeching halt.

19

*2.  The debtor made no life-style adjustments or continued living a lavish life-style*

Examination of a debtor's "lavish life-style" is the same as consideration of the debtor's ability to pay.  The implication of the "lavish life-style" test is simple and unmistakable: "if you (debtor) weren't spending your money on all these luxury items, you could pay this debt."  On this point, Congress has spoken: the ability to repay debt is not cause for dismissal under § 707(a).  The vast majority of courts that have examined the issue concede this point.  This Court concludes that examination of a debtor's life-style for purposes of § 707(a) is improper.

*3.  The debtor filed the case in response to a judgment, pending litigation, or collection action*

At the risk of sounding flippant, who doesn't?  Almost every bankruptcy case is filed because a creditor is pursuing a debtor, whether it be calls from debt collectors, repossessions, suits on unsecured debt, or residential foreclosures.  This "factor" is neither noteworthy nor probative.

*4.  There is an intent to avoid a large, single debt*

Again, experience dictates that seeking to discharge large debts is not uncommon.  The best example is that of the closely-held corporate debtor.  Most lenders to closely-held corporations require guaranties from the individual owners of the corporation.  If the corporation fails and ends up in bankruptcy, the owners usually follow right behind it, listing the guaranteed corporate debt as their largest claim.  This is exactly what happened in this case, and it is hardly remarkable.

*5.  The debtor made no effort to repay debts*

Again, what we are really talking about here is not the effort, but rather the ability, to repay debts.  No one questions the debtor whose cash flow does not provide for debt repayment.  A debtor who does not have the cash cannot make the payments.  This factor is simply another attempt to use a debtor's ***ability*** to repay debts as grounds for dismissal of a Chapter 7 case.

20

*6.  The unfairness of the use of Chapter 7*

This "test" or "factor" is rendered meaningless by its subjectivity.  One person's (or judge's) unfairness is another person's fresh start.

*7.  The debtor has sufficient resources to pay debts*

Again, this is nothing more than an examination of a debtor's ability to repay.

*8.  The debtor is paying debts of insiders*

At the risk of sounding like a broken record, we are back to the debtor's ability to pay.  The insinuation is clear: if the debtor can afford to pay someone else's debts, he or she should be paying his or her own.  If the payments are somehow subject to avoidance or recovery by a bankruptcy trustee, then the creditors are better served by the continuation of the case, and the recovery of those monies by a trustee for the benefit of all creditors.

*9.  The schedules inflate expenses to disguise financial well-being*

This is not cause for dismissal.  It is cause for denial of a discharge.[47]  In certain cases, it may be a crime.[48]

*10.  The debtor transferred assets*

The fraudulent transfer of assets is not cause for dismissal of a Chapter 7 bankruptcy case.  If anything, the opposite is true: if a debtor has fraudulently transferred assets, a major function of the bankruptcy process is the recovery of those assets so that they may be equitably distributed to creditors.  The vast majority of Chapter 5 of the Bankruptcy Code is devoted to providing a Chapter

---

[47]  *See* § 727(a)(4)(A) ("The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in connection with the case, made a false oath or account.").

[48]  *See* 18 U.S.C. § 157.

21

7 trustee with the power to recover those transfers.[49]  It is widely recognized that one of the main

reasons that involuntary bankruptcies are filed by creditors is to allow for the recovery of transfers

by a trustee using his or her Chapter 5 powers.[50]

*11.   The debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors*

This test may be the most vague and subjective of all.  No one can dispute that every Chapter

7 debtor utilizes the protections of the Bankruptcy Code to the detriment of his or her creditors.

Upon the filing of the case, the debtor is protected by the automatic stay, and the creditors are denied

the ability to continue their collection actions.  Assuming the debtor qualifies, he or she obtains the

remedy that is of the ultimate detriment to his or her creditors: a bankruptcy discharge.  What then,

is the difference between utilization and over-utilization? When does the detriment of the automatic

stay or the bankruptcy discharge move into the realm of unconscionability?  Once again, beauty is

in the eye of the beholder.  The "factor" is rendered meaningless by its inherent subjectivity.

*12.   The debtor employed a deliberate and persistent pattern of evading a single major creditor*

This test is nothing more than a variation on all of the previous factors relating to creditors

pursuing debtors for collection.  The validity of this factor has already been discussed.  The Court

finds it of little value.

---

[49]   *See* § 544 (trustee given avoiding powers of judgment lien creditor); § 545 (trustee given power to avoid statutory liens); § 547 (trustee given power to avoid preferences); § 548 (trustee given power to avoid fraudulent transfers); and § 549 (trustee given power to avoid certain post-petition transfers).

[50]   *See* 2 Collier on Bankruptcy ¶ 303.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

*13. The debtor failed to make candid and full disclosure*

A debtor's failure to disclose information goes to whether he or she should receive a discharge, not whether he or she should be allowed to proceed in Chapter 7. If there are grounds for denial of a discharge, one expects an adversary proceeding to be filed. Moreover, if a debtor has failed to disclose assets, and those assets are discovered and recovered by a Chapter 7 trustee, creditors usually find cause for celebration and completion of a Chapter 7 case rather than for its dismissal.

*14. The debtor's debts are modest in relation to assets and income*

This factor is another variation on the "ability to pay" theme. The ability to pay is not grounds for dismissal under § 707(a).

*15. There are multiple bankruptcy filings or other procedural "gymnastics"*

Cases that have mentioned this factor have not defined "procedural gymnastics" with any precision. If a debtor has engaged in improper conduct in the current case, such conduct would most likely fall under § 707(a)(1), which defines "unreasonable delay by the debtor that is prejudicial to creditors" as cause for dismissal.[51]  When it comes to the issue of multiple filings, there can be little doubt that debtors who file multiple bankruptcy cases may have their access to the bankruptcy court limited. Section 109(g)(1) of the Bankruptcy Code provides that

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> > (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court

---

[51] § 707(a)(1).

23

in proper prosecution of the case[.][52]

Under this section, if a debtor has failed to perform the duties required of a debtor in a case, that case may be dismissed, and the doors to the bankruptcy court may be locked for a period of 180 days. The United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit") has endorsed this concept of dismissal, but has limited the ability of the bankruptcy court to bar a debtor's access to the bankruptcy court to the 180-day period set forth in § 109(g).[53]  There is no need for a court to step into the world of "bad faith" in order to dismiss a case where a debtor has acted improperly in this case or a recently filed and dismissed case.

This Court concludes that the fifteen-factor test is of no value.  At least five of the factors relate to a debtor's ability to pay.  Three relate to a debtor trying to obtain a discharge as a result of the collection efforts or amount of debt owed to a single creditor.  Others relate to conduct that precludes a discharge.  Two are so vague as to be meaningless.  The broader "case by case analysis" endorsed by the Eleventh Circuit in *Piazza* is also of no assistance due to its massively subjective nature.  After review of the law and the conflicting views espoused by numerous courts on this issue, this Court is convinced of two things: (1) Congress intended that a debtor's ability to pay debts not be cause for dismissal under § 707(a); and (2) most cases dismissed under § 707(a) under the guise of "bad faith" are dismissed primarily due to the debtor's ability to pay pre-petition debt.

A Chapter 7 bankruptcy case serves two separate and distinct purposes: relief for the debtor (the discharge of indebtedness) and distribution of non-exempt, unencumbered assets to creditors. The Bankruptcy Code contains specific legal standards for denial of a discharge or a determination

---

[52] § 109(g)(1).

[53] *In re Frieouf*, 938 F.2d 1099 (10th Cir. 1991).

that a particular debt should be excepted from discharge.  In addition, the Bankruptcy Code and Rules provide significant procedural protections when a debtor's right to a discharge is challenged. A separate adversary proceeding must be filed,[54] the opportunity for discovery must be provided,[55] and the issues must be fully adjudicated, either by summary judgment or after trial on the merits. A motion brought under § 707(a) is a poor substitute for these procedural safeguards, especially when the alleged "abuse" of the bankruptcy process is the discharge of indebtedness.  If there are grounds to deny a discharge or determine that a particular debt should not be discharged, that litigation should be brought.  Section 707(a) is not "§ 727 lite."  A creditor or the UST may not argue that conduct that does not rise to the level sufficient to deny a debtor a discharge is sufficient to deny access to the bankruptcy system (and, more specifically, the bankruptcy discharge), at least in this Court.[56]

It makes no sense to dismiss a Chapter 7 case when there are assets to be administered for the benefit of creditors, regardless of the nature of a debtor's pre-petition conduct.  If a trustee can recover money and pay it to creditors, that is what should happen.  In most cases, a distribution from the bankruptcy trustee is the only money creditors are likely to see from the debtor.[57]  In this case,

---

[54] Federal Rule of Bankruptcy Procedure 7001.

[55] Federal Rules of Bankruptcy Procedure 7026 through 7037.

[56] Moreover, the question of whether to dismiss a case under § 707(a) is left to the sound discretion of the bankruptcy court.  This Court believes it has the discretion to not dismiss a case where the "cause" alleged sounds in the nature of § 523 or § 727 claims and to require in the alternative that if such claims exist, they be litigated as § 523 or § 727 claims.

[57] No creditor appeared in this case in support of the Motion, and no one has sought to deny the Bushyheads their discharge or have a particular debt declared non-dischargeable using the traditional route (i.e., an adversary proceeding).  While there is some evidence that counsel for Comerica encouraged the UST to file the Motion, the Court gives that fact little weight.  The sending of a single e-mail hardly demonstrates a fierce desire to litigate or a strong conviction

25

Malloy has already collected $15,000.  The administration and distribution of those funds should be completed.

In sum, the Court concludes that a bankruptcy case should be dismissed "for cause" under § 707(a) only under one of the enumerated subsections or "where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7."[58]  The Court expects very few cases to meet such a stringent standard.  This case does not.  The Bushyheads have sought Chapter 7 relief to discharge several debts, the largest of which is the Spa Loan.  The only remarkable aspect of this case is the Bushyheads' income.  If they did not earn a lot of money, we would not be here.  On that issue, Congress has spoken.  The ability to pay is not cause for dismissal under § 707(a).

**Conclusion**

The Motion is overruled.  A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 21st day of January, 2015.

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6838.6

---

that justice is not being served.

[58] *Kane & Kane*, 406 B.R. at 168.

26